UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


KEVIN CARTER                          :

        v.                            :        Docket No. 3:07CV1477(EBB)

UNITED STATES OF AMERICA              :


RULING ON MOTION FOR RECONSIDERATION

Pending before the Court in this habeas corpus proceeding is Kevin Carter's ("Carter")

motion for reconsideration[1] of the Court's denial of his petition to vacate his conviction and

sentence [doc. # 22].[2]  Specifically, Carter asks the Court to reconsider his claim that his counsel

was ineffective in not contesting the sentence enhancements he received for being a career

offender and armed career criminal.[3]  For the following reasons, the motion for reconsideration

[doc. # 24] is granted.[4]  Upon reconsideration, the Court finds that Carter's sentence

---

[1]Carter is proceeding *pro se* and thus his papers are read liberally and are interpreted as
raising the strongest arguments they suggest.  Bennett v. Goord, 343 F.3d 133, 137 (2d Cir.
2003).

[2]Although Carter's motion is captioned as a "motion to amend judgment pursuant to Fed.
R. Civ. P. 59(e)," it was docketed as a motion for reconsideration.

[3]Carter also claims that his counsel was ineffective for failing to contest the mandatory
seven-year consecutive sentence he received as a result of his conviction for brandishing a
firearm in connection with a crime of violence.  Because the Court concludes that Carter was not
an armed career criminal and thus was not subject to a fifteen-year mandatory sentence pursuant
to 18 U.S.C. § 922(g), his claim that the seven-year consecutive sentence under 18 U.S.C. §
924(c)(1)(A) did not apply pursuant to the statute's prefatory "except clause" is moot and will
not be considered by the Court.

[4]Reconsideration is appropriate because, contrary to the government's claim that the
motion is a second or successive habeas petition, the motion merely seeks to amend the initial
habeas petition.  Carter filed the instant motion on June 30, 2008, two weeks before the Court
issued its ruling denying his habeas petition on July 14, 2008.  However, because of a clerical
error, the instant motion was not docketed until July 28, 2008.  Thus, because there had been no

enhancements under both the career offender guidelines and the Armed Career Criminal Act were not appropriate[5] and that his counsel's failure to object to those sentence enhancements constitutes ineffective assistance of counsel that caused Carter actual prejudice.

I.      Pertinent Factual Background[6]

On January 21, 2005, a jury convicted Carter on all counts of a three-count indictment that charged him with Hobbs Act Robbery, in violation of 18 U.S.C. § 1951 (count one), Using and Carrying a Firearm in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c) (count two), and being a Prohibited Person in Possession of a Firearm, in violation of 18 U.S.C. 922(g) (count three).  The three counts of conviction all stemmed from the same jewelry store robbery on March 20, 2003.[7]

Carter was subject to a mandatory seven-year consecutive sentence under 18 U.S.C. § 924(c) because the jury found that he brandished a firearm in relation to a crime of violence.  In

_____

adjudication on the merits of Carter's habeas petition at the time he initially filed this motion, the Court does not construe it as a second or successive habeas petition.  Cf. Littlejohn v. Artuz, 271 F.3d 360, 362 (2d Cir. 2001).

[5]A hearing is not required where, as here, there is no plausible explanation of counsel's error.  Johnson v. United States, 313 F.3d 815, 818 (2d Cir. 2002) (citing Jackson v. Leonardo, 162 F.3d 81, 86 (2d Cir. 1998)).

[6]A full recitation of the underlying facts is set forth in the Court's ruling on Carter's motion pursuant to 28 U.S.C. 2255.  Familiarity with those facts is assumed and they will not be repeated herein.

[7]A conviction of Hobbs Act Robbery carries a statutory maximum sentence of twenty years, but no mandatory minimum.  A violation of 18 U.S.C. § 924(c)(1)(A) carries a mandatory minimum consecutive sentence of seven years and a maximum penalty of up to life imprisonment.  A defendant who qualifies as an armed career criminal under 18 U.S.C. § 924(e) is subject to a fifteen-year mandatory minimum and a maximum of life imprisonment for a violation of 18 U.S.C. § 922(g).  See 18 U.S.C. §§ 922(g), 924(e)(1).  If the defendant is not an armed career criminal, then the maximum penalty is ten years.  18 U.S.C. §§ 922(g), 924(a)(2).

addition, because Hobbs Act Robbery is a crime of violence and because Carter was found to have at least two prior felony convictions for either a crime of violence or a controlled substance offense, he was subject to sentence enhancement as a career offender under Section 4B1.1 of the United States Sentencing Guidelines ("U.S.S.G.").  Carter was also subject to sentence enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), because he was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 924(g), and because he was found to have three prior predicate convictions of either a violent felony or serious drug offense.  Accordingly, his guideline sentencing range was 360 months to life. U.S.S.G. §§ 4B1.1(c), 4B1.1(c)(3), 4B1.4(c).

Carter's pre-sentence report ("PSR") identified five prior felony convictions that purportedly qualified as a "crime of violence" or a "controlled substance offense" as defined in the career offender guidelines and also as a "violent felony" or "serious drug offense" under the ACCA.  Specifically, (1) a June 10, 1985 conviction of robbery in the 3rd degree, (2) an August 11, 1988 conviction of risk of injury to a minor, (3) a January 2, 1992 conviction of sale of narcotics, (4) a January 2, 1992 conviction of possession of narcotics, and (5) a January 25, 1994 conviction of sale of narcotics.[8]  The PSR's factual descriptions of his 1985 robbery, 1988 risk of injury and 1994 narcotics convictions were taken from police reports.  The PSR contained no information at all regarding the underlying facts of his two 1992 drug convictions, but merely reported the fact of those convictions and stated that "the police report[s] are no longer

_____

[8]These convictions gave Carter thirteen criminal history points and resulted in a criminal history category VI, even though zero criminal history points were awarded for the 1985 robbery conviction.  His classification as both a career offender and an armed career criminal also gave him a criminal history category VI.

available."

Carter was sentenced on May 2, 2005. The Court adopted the guideline calculations set forth in Carter's PSR and sentenced him to a total term of imprisonment of 360 months.[9] Carter's counsel did not object to any of the guideline calculations or to the propriety of using any of Carter's prior convictions as described in his PSR to support a sentence enhancement as a career offender or armed career criminal.

Carter appealed his conviction, but not his sentence. The Second Circuit affirmed his conviction on March 27, 2006. He did not petition for certiorari and his conviction thus became final on June 25, 2006. Burrell v. United States, 467 F.3d 160, 164 (2d Cir. 2006) (holding that for the purposes of 28 U.S.C. § 2255, a conviction becomes final when, *inter alia*, the time for filing a certiorari petition expires). Carter was represented by the same attorney in both the district court and the court of appeals.

II.    Discussion

Carter asserts that his counsel provided ineffective assistance in violation of the Sixth

---

[9]Because Carter was convicted of multiple counts, one of which was a violation of § 924(c), and was found to be a career offender, his applicable guideline sentencing range under § 4B1.1(c) was the greater of "the guideline range that results by adding the mandatory minimum consecutive penalty required by the § 924(c) count[] to the minimum and the maximum of the otherwise applicable guideline range determined for the count[s] of conviction other than the § 924(c) count[]; . . . and the guideline range determined using the table in [§ 4B1.1(c)(3)]" which, without a reduction for acceptance of responsibility, is 360 months to life. Thus, by virtue of Carter's § 924(c) conviction and his status as a career offender, his guideline range was 360 months to life. According to the judgment of conviction, Carter's sentence was broken down to a 240-month (twenty years) term on count one, a mandatory consecutive term of eighty-four months (seven years) on count two and a 360-month term on count three. The 360-month sentence on count three was concurrent to count one, while the seven-year sentence on count two was consecutive to count one.

Amendment by failing to object to his classifications as a career offender and armed career criminal. According to Carter, he was erroneously determined to be a career offender and armed career criminal on the basis of prior convictions that were not proper predicate offenses under the career offender guidelines and the ACCA and that his counsel's failure to object to the use of those prior convictions resulted in erroneous sentence enhancements that caused him actual prejudice.[10]

In opposition, the government asserts that Carter was properly classified as a career offender and armed career criminal and that his guideline range was properly calculated to be 360 months to life; that his reliance on United States v. Savage is misplaced because it announced a new procedural rule that is not applicable retroactively to cases on collateral review; and that Carter is not entitled to resentencing because his substantive rights were not violated.

A.    Career Offender & Armed Career Criminal Classifications

Carter asserts that he did not have the required two prior felony convictions to support a sentence enhancement under the career offender guidelines or the three prior predicate

---

[10]Previously, this Court ruled that Carter's January 1994 conviction was a valid predicate offense for career offender status because, contrary to his contention, the court records established that he was represented by counsel at his guilty plea  Because that conviction and his June 10, 1985 robbery conviction, which Carter had not initially challenged, were found sufficient for career offender classification, the Court did not address his claim that one of his January 2, 1992 convictions was invalid because he was not advised of his rights before the state court accepted his guilty plea.

Further, there is no merit to Carter's newly raised assertion that his two January 2, 1992 convictions should not have been counted in his criminal history score because they were imposed on the same day.  Those two convictions were properly counted as separate convictions because they were separated by an intervening arrest.  U.S.S.G. § 4A1.2(a) (explaining that prior sentences are always counted separately if they were imposed for offenses that were separated by an intervening arrest, "*i.e.*, the defendant is arrested for the first offense prior to committing the second offense").  Carter's January 2, 1992 sentences were imposed for offenses that occurred on January 4, 1991 and May 1, 1991.

convictions that are required to support a sentence enhancement as an armed career criminal under the ACCA.  Carter is correct.

To assess whether a prior conviction constitutes a predicate offense under the guideline provisions pertaining to career offenders or the statute governing armed career criminals, a court may not engage in an elaborate fact-finding process to determine the particular facts underlying those convictions, but must apply a "categorical approach" which requires it to look only to the fact of conviction and the statutory definition of the prior offense.  Taylor v. United States, 495 U.S. 575, 600, 602 (1990) ("[t]he court must consider whether the elements of a prior predicate offense are of the type that would justify its treatment as a violent felony or serious drug offense without inquiring into the specific conduct of the particular defendant."); United States v. Johnson, No. 08-5245-cr, 2010 WL 2991078, at *2 (2nd Cir. Aug 02, 2010) (explaining that under the categorical approach the court must consider the offense generically, *i.e.*, examine it in terms of how the law defines it and not in terms of how an individual offender might have committed it on a particular occasion).  If the statutory definition of a prior conviction plainly reveals that it is categorically a crime of violence (or a controlled substance offense) then there is no problem because the conviction necessarily implies that the defendant was found guilty of all the elements of the predicate offense.  Taylor, 495 U.S. at 599; United States v. Brown, 52 F.3d 415, 426 (2d Cir. 1995) (applying Taylor's categorical approach and concluding that a prior conviction under New York's robbery statute is *per se* a violent felony and thus that prior conviction was correctly regarded as a predicate offense for the purpose of sentence enhancement).

However, in a narrow range of cases where the statute of a prior conviction is broader

than the federal definitions of violent felony or serious drug offense in that it criminalizes both predicate and non-predicate conduct, the sentencing court should use a modified categorical approach and go beyond the mere fact of conviction to determine whether the conviction necessarily rested on a fact identifying it as a predicate offense. Taylor, 495 U.S. at 602; Shepard v. United States, 544 U.S. 16, 26 (2005);[11] United States v. Palmer, 68 F.3d 52, 59 (2d Cir. 1995) (holding that where the statute of a prior conviction reaches both conduct that satisfies the guideline definition of a crime of violence and conduct that does not, and the conviction is the result of a guilty plea, the sentencing court may look to easily produced and evaluated documents that clearly establish the conduct of which the defendant was convicted, but may not consider the depiction of that conduct as set forth in the PSR prepared for the sentencing court); see also United States v. Rosa, 507 F.3d 142, 151-53 (2d Cir. 2007); United States v. King, 325 F.3d 110, 113-15 (2d Cir. 2003). Put another way, when the statute of the prior conviction contains phrases that cover several different generic crimes, some of which require, for example, violent force and

---

[11]Taylor and Shepard both involved the issue of whether a burglary conviction under a non-generic state statute, *i.e.*, one that defined burglary broader than the generic definition of burglary because it included breaking and entry into a boat whereas generic burglary is limited to breaking and entry into buildings, was a crime of violence that could support a sentence enhancement under the ACCA. In Taylor, the Supreme Court ruled that, where the defendant is convicted of non-generic burglary after a jury trial, the court is not limited to the fact of conviction, but could use the modified categorical approach and make a broader inquiry into the underlying facts by looking to the charging document and jury instructions defining the elements of the offense of conviction. 495 U.S. at 601. In Shepard, the Supreme Court extended Taylor to prior convictions that were based on guilty pleas. It ruled that where a defendant's prior conviction was under a non-generic burglary statute, the sentencing court must determine whether, in pleading guilty, the defendant necessarily admitted to the elements of generic burglary, and in doing so the court was limited to the terms of the charging document, the terms of a plea agreement, a transcript of the plea colloquy in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record, but could not rely on police reports or complaint applications, even if they were undisputed by the defendant. 544 U.S. at 16.

some which do not, the modified categorical approach permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record. Johnson v. United States, – U.S. – , 130 S.Ct. 1265, 1273 (2010).

In the Second Circuit, courts apply the approach first endorsed in Taylor to determine whether a prior conviction is a proper predicate for purposes of a sentence enhancement under both the career offender guideline and the ACCA. Palmer, 68 F.3d at 55 (noting that because of the substantial similarity between the ACCA's definition of violent felony and the guideline definition of crime of violence, authority interpreting one phrase is found to be persuasive in interpreting the other); United States v. Pearson, 77 F.3d 675, 676 (2d Cir. 1996) (noting that the Taylor analysis is equally applicable to the determination of whether a prior conviction is a controlled substance offense for purposes of the career offender guidelines).

### 1. Carter's Sentence Enhancement as a Career Offender

In order to be sentenced as a career offender under the guidelines, Carter needed at least two prior felony convictions for either a "crime of violence" or a "controlled substance offense." U.S.S.G. § 4B1.1(a). A prior conviction constitutes a crime of violence if the statute under which the defendant was previously convicted has as an element the use, attempted use or threatened use of physical force against the person of another or otherwise involves conduct that, by its nature, presents a serious potential risk of physical injury to another. U.S.S.G. § 4B1.2(a). A prior conviction is a controlled substance offense if the statute of the prior conviction "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture. import, export, distribute or dispense." U.S.S.G. § 4B1.2(b). According to Carter, only one of his prior

convictions qualifies as a predicate conviction under the career offender guidelines.

        a.        Carter's Prior Convictions for "Crimes of Violence"

Carter maintains that neither his 1985 conviction of robbery in the 3rd degree nor his 1988 conviction of risk of injury to a minor can be counted as crimes of violence in determining whether he was a career offender.

As Carter correctly asserts, his 1985 conviction of robbery in the 3rd degree cannot be counted as a predicate conviction pursuant to guideline § 4A1.1(2)(e) because the PSR awarded it zero criminal history points.[12]  A prior conviction that was not counted in a defendant's criminal history calculation cannot be used in determining his status as a career offender.  United States v. Moree, 220 F.3d 65, 68 (2d Cir. 2000).

Carter also correctly asserts that his 1988 conviction of risk of injury to a minor cannot be counted as a prior violent felony conviction under either the categorical approach or the modified categorical approach.  This is because the Connecticut risk of injury statute is broader than the guideline definition of a crime of violence in that it includes conduct that falls outside the guideline definition and the government did not submit sufficient proof establishing that this conviction necessarily rested on a fact identifying it as a crime of violence.  See Shepard, 544 U.S. 13 (2005); Pearson, 77 F.3d at 677 (noting the circuit's disapproval of relying solely on the PSR prepared for the sentencing court, but finding it permissible to do so when the federal PSR recites the essential facts as presented in the presentence report prepared for use in connection with the prior conviction); Palmer, 68 F.3d at 55 (noting that using the PSR prepared for the

_____

[12]This conviction was not counted in Carter's criminal history score because the sentence was not imposed within fifteen years of his commission of the instant offense and his incarceration on that conviction did not extend into that fifteen-year period.  U.S.S.G. § 4A1.2(e).

sentencing district court would be "at odds with Taylor, the applicable Guidelines commentary, and the vast majority of the pertinent circuit court precedent," and holding that under the modified categorical approach, when the prior conviction resulted from a guilty plea, recourse should be had to easily produced and evaluated court documents that clearly establish the conduct of which the defendant was convicted); cf. Brown, 52 F.3d at 426 (holding that a presentence report prepared in connection with a prior conviction is properly consulted by the sentencing district court to determine if the defendant's prior conviction was for a crime of violence).[13]

The Connecticut statute of this prior conviction, Conn. Gen. Stat. § 53-21, makes it a crime to wilfully or unlawfully cause or permit any child under sixteen years of age to be placed in a situation in which his or her life or limb is endangered or to do any act likely to impair the health or morals of a child. The Connecticut Supreme Court interpreted the word "health" in this statute to include mental health and held that the legislature intended to include psychological harm within the ambit of the statute. State v. Payne, 240 Conn. 766, 771 (1997). Thus, § 53-21 is not categorically a crime of violence because it is not limited in scope to the use, attempted use or threatened use of physical force or to conduct that presents a serious risk of physical injury to

---

[13]Taylor was decided in 1992. Shepard was decided on March 7, 2005. Palmer was decided on October 16, 1995. Brown was decided on April 12, 1995. Carter was sentenced on May 2, 2005 and his conviction became final on June 25, 2006. All of these cases were decided before Carter's conviction became final and thus there is no issue as to whether they apply retroactively on habeas review pursuant to Teague v. United States, 489 U.S. 288 (1989) ("[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rule is announced."). E.g., United States v. Johnson, 457 U.S. 537, 549 (1982). See discussion infra pp. 19-23.

another. Rather, the statute is broader and criminalizes additional conduct that is not included in the guideline definition of a crime of violence, *i.e*, it also criminalizes psychological injury without the use, attempted use or threatened use of physical force or injury. Accordingly, the Court must apply the modified categorical approach to determine whether, in pleading guilty, Carter necessarily admitted facts identifying the conviction as a predicate crime of violence.[14] See Taylor, 495 U.S. at 602; Shepard, 544 U.S. at 26; Palmer, 68 F.3d at 58-59 (applying the modified categorical approach and determining that Conn. Gen. Stat. § 53a-181b, which prohibits intimidation based on bigotry or bias, was not *per se* a violent felony because the statute addressed harassment, intimidation and damage to real or personal property as well as physical contact, but nonetheless upholding a sentence enhancement because the prior plea proceeding contained a lucid description of conduct that manifestly constituted a crime of violence to which the defendant assented).

The only account of the facts underlying Carter's risk of injury to a minor conviction was the description set forth in his PSR and those facts were drawn entirely from a police report, which, as noted, cannot be used to support career offender classification when the statute of the underlying conviction is not *per se* a "crime of violence." In the absence of a transcript of Carter's guilty plea colloquy, plea agreement or other comparable judicial record establishing that this conviction necessarily rested on a fact identifying it as a crime of violence, Shepard, 544 U.S. at 26, Carter's 1988 conviction of risk of injury to a minor could not be counted as a

---

[14]The government apparently agrees that this statute criminalizes both predicate and non-predicate offense conduct and thus this conviction must be analyzed under the modified categorical approach. United States' Resp. To Def's. Supp. Pro Se Mot. Pursuant to 28 U.S.C. § 2255 at 6 n.2, Carter v. United States, No. 07-cv-1477 (D. Conn. Aug. 19, 2009).

predicate crime of violence under the career offender guidelines. The government did not produce such records and thus this prior conviction could not be counted as a predicate violent felony.

In sum, neither Carter's 1985 conviction of robbery in the 3rd degree nor his 1988 conviction of risk of injury to a minor are proper predicate crimes of violence under the career offender guidelines.

b.    Carter's Prior "Controlled Substance" Convictions

Carter's PSR also identified three prior drug convictions under Conn. Gen. Stat. § 21a-277(a) that were, purportedly, predicate convictions for career offender classification: (1) a January 2, 1992 conviction of sale of narcotics; (2) a January 2, 1992 conviction of possession of narcotics; and (3) a January 25, 1994 conviction of sale of narcotics. Carter contends that only one of these convictions could properly be counted as a prior controlled substance offense under the career offender guidelines. For reasons analogous to those regarding Carter's crimes of violence, the Court agrees.

All of these convictions were under Connecticut Statute § 21a-277(a), which prohibits manufacturing, distributing, selling, prescribing, dispensing, compounding, transporting with intent to sell or dispense, possessing with the intent to sell or dispense, offering, giving or administering to another person any controlled substance. Not only does this statute criminalize offering, giving or administering a controlled substance, a "sale" is defined as including "any form of delivery which includes barter, exchange or gift, or offer therefore. . . ." Conn. Gen. Stat. § 21a- 240(50). Because this statute criminalizes conduct that does and conduct that does not constitute a controlled substance offense under the guideline, *i.e.*, the mere offer or gift of a

controlled substance, it is not categorically a "controlled substance offense." Thus, the modified categorical approach is used to determine if the factual basis supporting Carter's guilty pleas and convictions necessarily rested on facts that would make them controlled substance offenses within the meaning of § 4.B1.2(b). Taylor, 495 U.S. at 601; Palmer, 68 F.3d at 59; see also United States v. Savage, 542 F.3d 959 (2d Cir. 2008) (finding error where the district court sentenced the defendant as a career offender based on the mere fact of his prior conviction under § 21a-277(a) without examining the type of court documents enumerated in Shepard to determine if his plea and conviction necessarily rested on a fact making it a controlled substance offense).

Applying the modified categorical approach, the Court finds that Carter's 1994 conviction under § 21a-277(a) "necessarily" rested on a fact identifying it as a predicate controlled substance offense. Although the PSR's description of the conviction merely repeats the facts contained in the police report and thus cannot be relied on, the government has now produced the transcript of Carter's plea colloquy which establishes that he admitted to possessing cocaine with intent to sell, in violation of Conn. Gen. Stat. § 21a-277(a). Accordingly, Carter's 1994 conviction under § 21a-277(a) qualifies as a controlled substance predicate offense and the conviction was properly counted in determining his career offender status.

This is not the case, however, with regard to Carter's two January 2, 1992 convictions under § 21a-277(a) because there is insufficient proof establishing that either one of them rested on a fact that would qualify it as a controlled substance offenses under the guidelines. Indeed, as noted, the government provided no information whatsoever regarding the factual basis supporting these convictions and the PSR on which the government and the Court relied merely states the fact of the convictions. This is not sufficient. Palmer, 68 F.3d at 59 (holding that a

PSR prepared for a sentencing court presented with an enhancement issue would ordinarily be a surrogate for the elaborate factfinding process criticized in <u>Taylor</u> and that its use would be "at odds with <u>Taylor</u>, the applicable Guidelines commentary, and the vast majority of the pertinent circuit court precedent."). In the absence of appropriate judicial records from which the Court could determine whether Carter necessarily admitted to and was convicted of conduct coming within the guideline definition of a controlled substance offense, neither of these convictions could be counted as predicate offenses under the career offender guidelines.

Therefore, because only one of Carter's prior convictions – the 1994 conviction under § 21a-277(a) – is a proper predicate offense under the career offender guidelines, Carter did not have the required two prior felony offenses to support an enhanced sentence as a career offender.

2. <u>Carter's Sentence Enhancement Under the Armed Career Criminal Act</u>

Carter was sentenced to the fifteen-year mandatory minimum sentence under the ACCA, 18 U.S.C. § 924(e), because he was convicted of being a felon in possession of a firearm in violation of § 922(g) and his PSR identified three prior violent felony or serious drug offense convictions. Carter now claims that this enhanced sentence was not warranted because he did not have the required three predicate felony convictions to support an enhanced sentence under the ACCA. Carter is correct.

Although the <u>Taylor</u> approach is used to determine if prior convictions can be counted as prior predicate convictions under both the career offender guidelines and the ACCA, the two provisions have a few significant differences. For one, the definitions of "violent felony" and "serious drug offense" under the ACCA differ from the guideline definitions of "crime of violence" and "controlled substance offense." U.S.S.G. § 4B1.4, cmt. n.1 (noting that the terms

14

"violent felony" and "serious drug offense" as defined in 18 U.S.C. § 924(e)(2) are not identical to the guideline definitions in § 4B1.1). Another difference is that the time periods for counting prior convictions under guideline § 4A1.2 do not apply under § 924(e) of the ACCA. Id. And with regard to the age of the prior felonies, the Second Circuit and a majority of other circuits have held that there is no temporal restriction on the convictions that may be taken into account in determining whether a defendant is an armed career criminal pursuant to § 924(e). United States v. Paul, 156 F.3d 403, 404 (2d Cir. 1998).

The ACCA defines "violent felony" as any crime punishable by imprisonment for a term exceeding one year that (i) has as an element the use, attempted use or threatened use of physical force against the person of another, or (ii) is burglary, arson or extortion, involves the use of explosives or otherwise involves conduct that presents a serious potential risk of physical injury to another.[15] Physical force as used in the ACCA "means *violent* force – that is, force capable of

_____

[15]The specific examples set out in the so-called "residual clause" of § 924(e)(2)(B)(ii), *i.e.,* burglary, arson, extortion or use of explosives, have been read as limiting the scope of "violent felonies" to crimes that are roughly similar, in kind and degree of risk posed, to those examples, *i.e.*, crimes that entail the same kind of purposeful violent and aggressive conduct rather than every crime that "presents a serious potential risk of physical injury to another." Begay v. United States, 553 U.S. 137, 142 (2008). For example, attempt offenses may qualify as violent felonies under the residual clause if they present such a risk, James v. United States, 550 U.S. 192 (2007) (finding attempted burglary under Florida law constitutes a violent felony), but a conviction under a state DUI statute falls outside the scope of the clause because it is too unlike the specific examples. Begay, 553 U.S. at 143. This is also true with regard to a prior conviction for failing to report for imprisonment because that is a relatively passive offense that does not involve conduct presenting a potential risk of physical injury to another. Chambers v. United States, 129 S. Ct. 687 (2009) (settling a disagreement among the circuits on this issue). See also United States v. Johnson, 2010 WL 2991078, at *6 (holding that rioting at a correctional institution in violation of Conn. Gen. Stat. § 53a-179b is categorically a violent felony because it is similar in kind to the enumerated examples in the ACCA's residual clause in that each of the acts proscribed by the statute typically involves purposeful and deliberate conduct of a violent and aggressive nature of the type that "makes it more likely that an offender, later possessing a gun, will use that gun to deliberately harm a victim").

causing physical pain or injury to another." Johnson v. United States, 130 S.Ct. at 1271.

The ACCA defines "serious drug offense" as an offense under state law involving the manufacture, distribution or possession with intent to manufacture or distribute a controlled substance (as defined 21 U.S.C. § 802) for which a defendant may be sentenced to a maximum term of imprisonment of ten years or more. 18 U.S.C. §§ 924(e)(2)(A), (2)(B).

a.      Carter's Prior "Violent Felony" Convictions

Applying the Taylor analysis, it is clear that Carter's 1985 conviction of robbery in the 3rd degree, in violation of Conn. Gen. Stat. § 53a-136, is categorically a violent felony as that term is defined in § 924(e)(2)(B)(i).  For a defendant to be convicted of robbery in the 3rd degree under this Connecticut statute he must, in the course of committing a larceny, use or threaten the immediate use of physical force upon another person for the purpose of (1) preventing or overcoming resistance or (2) compelling a person to deliver up property or engage in other conduct which aids the commission of the larceny.  Conn. Gen. Stat. § 53a-133 (defining the elements of robbery under § 53a-136).  Because an essential element of this offense is the use or threatened use of physical force upon another person, it is categorically a violent felony under the ACCA.  Cf. Gomez v. Ashcroft, 293 F. Supp. 2d 162, 166 (D. Conn. 2003) (finding that robbery 3rd degree under Connecticut statutes is a crime of violence as defined in 18 U.S.C. § 16).

By its plain terms, the Connecticut robbery statute does not encompass conduct that would and conduct that would not qualify as a violent felony under the ACCA and thus, under the categorical approach, the court needed only to look to the fact of Carter's conviction to conclude that, in pleading guilty, he necessarily admitted a fact establishing the required element of the predicate violent felony offense – the use or threatened use of force.  See United States v.

Brown, 52 F.3d 415, 426 (2d Cir. 1995). Accordingly, Carter's 1985 conviction of robbery in the

3rd degree was properly counted as a prior conviction under the ACCA, despite the fact that it

was committed more than fifteen years prior to the instant offense and was not counted in his

criminal history score. See Paul, 156 F.3d at 404.

The statute of Carter's other violent felony conviction, risk of injury to a minor in

violation of Conn. Gen. Stat. § 53-21, is not, however, categorically a predicate violent felony

pursuant to Taylor and its progeny because it additionally criminalizes psychological harm that is

not caused by violent force capable of causing physical pain or injury to another. Thus, given

that not all of the acts proscribed by this statute involve violent and aggressive behavior, there is

a realistic probability that the state would apply it to non-violent conduct. Cf. James v. United

States, 550 U.S. 192, 208 (2007). Accordingly, as previously noted, a conviction under this

statute falls within the narrow range of cases in which the court must apply the modified

categorical approach and go beyond the fact of conviction to determine whether Carter

necessarily admitted to conduct that presents a serious potential risk of physical injury to another,

*i.e.*, .purposeful violent and aggressive acts involving the use or threatened use of violent force.

Because the only information before the Court regarding the factual basis of this

conviction was the description in Carter's PSR that was taken from the police report, the Court

does not have the appropriate judicial records showing what part of the statute Carter pleaded

guilty to and whether he admitted to conduct constituting a "violent felony," *i.e.*, conduct that

presented a serious potential risk of physical injury to another. Without such court records,

Carter's 1988 conviction of risk of injury to a minor, in violation of Conn. Gen. Stat. § 53-21,

could not properly be counted as one of the required three predicate felony convictions to support

his classification as an armed career criminal under the ACCA.

b.     Carter's "Serious Drug Offense" Convictions

As noted, the statute of Carter's drug convictions, Conn. Gen. Stat. § 21a-277(a), is also

not categorically a predicate offense pursuant to Taylor and its progeny.  Rather, because the

statute is broad and encompasses conduct that does not qualify as a serious drug offense under

the ACCA's definition, *i.e.*, the mere offer of drugs, Carter's prior convictions under this statute

could only be properly counted as predicate convictions if, under the modified categorical

approach, there was sufficient information showing that his guilty pleas and convictions

necessarily admitted conduct involving the manufacture, distribution or possession with intent to

manufacture or distribute a controlled substance.  And in this regard, the Court's inquiry was

limited to charging documents, terms of plea agreements or transcripts of colloquies between the

judge and the defendant in which the factual basis of the plea was confirmed by the defendant or

some comparable judicial record of this information, but the Court could not rely on police

reports or complaint allegations.  E.g., Shepard, 544 U.S. at 26.

Although, as previously discussed, the government has now produced judicial records to

satisfy its burden of proving that Carter's 1994 conviction of Conn. Gen. Stat. § 21a-277(a)

qualifies as a serious drug offense under the ACCA, the government has not met "the demanding

requirement" of showing that Carter's two January 2, 1992 convictions "necessarily involved (or

[his prior pleas] necessarily admitted) facts equating to" a predicate crime under the ACCA.  Id.

As noted, the only information about these two convictions is the information set forth in

Carter's PSR, which merely reports the fact of the convictions.  Because using that information

to support a sentence enhancement is at odds with Taylor, Shepard, Palmer and other district and

18

circuit court decisions that existed either at the time of Carter's sentencing or at the time his conviction became final, neither of his January 2, 1992 drug convictions could be counted in determining whether Carter had the required three predicate convictions to warrant a sentence enhancement under the ACCA.

In sum, Carter had only two ACCA prior predicate convictions – his 1985 conviction of robbery in the 3rd degree and his 1994 controlled substance conviction – that could properly be counted as a violent felony or serious drug offense under the ACCA. Accordingly, Carter was not subject to a sentence enhancement as an armed career criminal under 18 U.S.C. § 924(e).

B.      Teague's Non-Retroactivity Rule is Not Applicable

The government argues that Carter was correctly sentenced as a career offender or armed career offender under the procedures in place at the time of his sentencing and that Carter's reliance on United States v. Savage, 542 F.3d 959 (2d Cir. 2008), is erroneous because that case announced a new constitutional rule of criminal procedure that was decided after Carter's conviction became final and thus cannot be applied in his habeas petition pursuant to the non-retroactivity rule of Teague v. Lane, 489 U.S. 288 (1989). There is no merit to this argument.

Contrary to the government's argument, Savage, which was decided on September 18, 2008, more than two years after Carter's conviction became final, did not announce a new constitutional rule of criminal procedure. The case did not break new ground or impose new obligations on the states or federal government. Rather, the result in Savage was dictated by established Supreme Court and Second Circuit precedent that existed at the time Carter's conviction became final. See e.g., Teague, 489 U.S. at 301; Gray v. Netherland, 518 U.S. 152, 166 (1996) (holding that a rule is new unless a court considering the petitioner's claim at the time

19

his conviction became final would have felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution).

In Teague, the Supreme Court held that new constitutional rules of criminal procedure are not applicable[16] to cases that have become final before the new rule is announced unless they fall within one of two narrow exceptions. To determine whether a habeas petitioner is entitled to the application of a particular procedural rule, the court must look to the date on which the defendant's conviction became final, whether, given the legal landscape at the time the conviction became final, the rule is actually new and, if the rule is determined to be new, whether it nonetheless falls within one of the two narrow exceptions to non-retroactivity.[17] E.g., Beard v. Banks, 542 U.S. 406, 411 (2004); O'Dell v. Netherland, 521 U.S. 151, 156 (1997).

As the Teague court acknowledged, it is often difficult to determine when a case announces a new rule. Teague, 489 U.S. at 301. The Supreme Court, however, provided a general standard to guide that determination: "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." Id. (emphasis in original). Precedent dictates the result where the result would be "apparent to all reasonable jurists." Banks, 542 U.S. at 413. In other words, the retroactivity inquiry is irrelevant if a decision merely applies well-established principles to reach its result. Ferguson v. United States, 513 F.2d 1011, 1012-13 (2d Cir. 1975) (noting that the retroactivity analysis is irrelevant

---

[16]The Teague bar to retroactivity applies only to new procedural rules whereas "new rules of substantive criminal law are presumptively retroactive." Santana-Madera v. United States, 260 F.3d 133, 138 (2d Cir. 2001) (discussing whether a new rule is substantive or procedural).

[17]Because the Court finds that Savage did not announce a new rule, it need not discuss the two narrow exceptions to non-retroactivity.

in cases where the court applies well-established principles to varying fact situations which represent the bulk of judicial decision-making). A decision that merely applies well-established constitutional principles to a new set of circumstances is always applied retroactively on collateral review of a criminal conviction that became final before the decision was announced. Graham v. Hoke, 946 F.2d 982, 991 (2d Cir. 1991).

Not only does the government incorrectly assert that Savage announced a new constitutional rule of criminal procedure, it also mistakenly reads Savage as "hold[ing] for the first time that a violation of Connecticut General Statutes § 21a-277(a) could not be considered to be a categorical controlled substance offense because of the subtle differences between the Connecticut statute and its federal counterpart." This was not the holding in Savage. See Central Green Co. v. United States, 531 U.S. 425, 431 (2001) (noting that a court's discussion of an issue that is not in dispute is dictum because it is not essential to its disposition of any contested issue); United States v. Garcia, 413 F.3d 201, 232 n.2 (2d Cir. 2005).

The Savage court expressly stated that "the sole issue" before it "was whether or not the government has shown that the [underlying] charge was narrowed to include only predicate conduct" in accordance with the rules announced in Taylor and Shepard. Savage, 542 F.3d at 966. In Savage, the issue of whether the Connecticut statute was not categorically a controlled substance predicate offense was not disputed by the government, id. at 965 n.5, and the court merely noted that, pursuant to well-established precedent, the government was therefore required to show that the defendant's plea under § 21a-277(a) "necessarily rested on the fact identifying the conviction as a predicate offense." Id. at 966 (holding that where, as in that case, the statute of conviction is overly inclusive, the inquiry into whether the plea necessarily rested on a fact

identifying the conviction as a predicate offense "is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information") (quoting Shepard, 544 U.S. at 26). But as the court noted, "although everybody understood that the State alleged that Savage exchanged drugs for money, nothing in the plea colloquy established with certainty that Savage necessarily pleaded guilty to this fact." Id. at 967. Thus, because the statute of the prior conviction included conduct that fell outside the federal definition of a controlled substance offense and thus was not *per se* a predicate conviction, the court held that Savage's prior conviction under Conn. Gen. Stat. § 21a-277(a) could not count as a predicate prior conviction for the purpose of sentence enhancement.

The result in Savage was virtually compelled by existing Supreme Court precedent that existed at the time Carter's conviction became final, *i.e.*, Taylor and Shepard. In reaching its conclusion, the Savage court merely applied existing precedent to a new, yet analogous, set of circumstances. See Yates v. Aiken, 484 U.S. 211, 217 (1988) (stating that a case does not announce a new rule when it simply applies a principle that governed earlier analogous decisions); United States v. Johnson, 457 U.S. 537, 549 (1982) (concluding that there is no real question as to whether a decision applies retroactively when it merely applies settled precedent to different factual situations because in such a case it would be a foregone conclusion that the rule of the earlier case applies); Ferguson, 513 F.2d at 1013 (stating that a case does not announce a new rule when it merely states what should have been obvious from prior decisions).

Savage also did not overrule past precedent, disapprove a practice that had been sanctioned in prior cases or overturn a longstanding practice approved by near-unanimous lower-

court authority.  <u>Johnson</u>, 457 U.S. at 549-550 (finding non-retroactivity virtually compelled where a new rule was unanticipated).[18]  <u>Savage</u> did not impose any new obligation on the federal government.  The government's obligation to prove a prior conviction by something more than a police report had been imposed by cases that pre-dated Cater's sentencing, <u>e.g.</u>, <u>Palmer</u>, 68 F.3d at 58-59, and the obligations imposed by <u>Shepard</u> were in existence at the time his conviction became final.

For these reasons, there is no merit to the government's claim that <u>United States v. Savage</u>, one of the numerous cases on which Carter relies, could not be applied retroactively in his habeas petition.

### C.     <u>Ineffective Assistance of Counsel</u>

To obtain collateral relief under § 2255, a petitioner must show that his sentence was imposed in violation of the Constitution or laws of the United States, or that his sentence was in excess of the maximum authorized by law.  28 U.S.C. § 2255.  However, even Constitutional errors are not grounds for habeas relief unless they resulted in actual prejudice to the defendant.  <u>E.g.</u>, <u>Underwood v. United States</u>, 166 F.3d 84, 87 (2d Cir. 1999).

---

[18]Unlike <u>Savage</u>, the case the government relies on in support of its non-retroactivity argument, <u>United States v. Giggey</u>, 551 F.3d 27 (1st Cir. 2008), reversed long-standing precedent.  <u>Giggey</u> held that prior convictions under Maine's non-residential burglary statute were not *per se* crimes of violence under the career offender guideline.  The <u>Giggey</u> court was persuaded to abandon its precedent based in large part on Supreme Court decisions that interpreted identical language in the ACCA.  In contrast to <u>Giggey</u>, which stated that it was not announcing a retroactive substantive change in the law, <u>id.</u> at 36 n.3 (noting that "its decision to change course affects only the procedure by which a district court calculates a defendant's sentence"), the Seventh and Tenth Circuits have ruled otherwise, holding that a decision that narrows the scope of a criminal statute by interpreting its terms announces a new substantive rule that applies retroactively under <u>Teague</u>.  <u>Welch v. United States</u>, 604 F.3d 408, 413-14 (7th Cir. 2010) (citing cases); <u>United States v. Shipp</u>, 589 F.3d 1084, 1091 (10th Cir. 2009).

Carter contends that he is entitled to habeas relief because he was deprived of the effective assistance of counsel in violation of his rights under the Sixth Amendment. Specifically, he claims that his counsel's performance was constitutionally defective because he did not challenge the applicability of Carter's prior convictions as predicate offenses to support a sentence enhancement under the career offender guidelines and the ACCA. Carter also claims that counsel's defective representation caused him actual prejudice. The Court agrees with both claims.

As a preliminary matter, the Court finds that Carter is not barred from raising this claim because of his counsel's failure to raise it on appeal. While it is a general rule that a claim may not be asserted in a habeas petition unless it was raised on direct review, Reed v. Farley, 512 U.S. 339, 354 (1994), this procedural default rule does not apply to claims of ineffective assistance of counsel. Massaro v. United States, 538 U.S. 500, 505-06 (2003); Johnson v. United States, 313 F.3d 815, 817 (2d Cir. 2002) (noting that a petitioner's challenge to his guideline calculation takes the form of a Sixth Amendment ineffective assistance of counsel claim that cannot be procedurally barred). This is especially so where, as here, the defendant was represented by the same attorney at trial and on appeal. Bloomer v. United States, 162 F.3d 187, 192 (2d Cir. 1998) (noting that in such a case the procedural default rule should not apply because it would be unreasonable to expect the attorney to identify and attempt to persuade an appellate court that he had committed errors of constitutional magnitude at trial that entitled his client to a new trial). Accordingly, counsel's failure to raise ineffective assistance of counsel on appeal does not render the claim procedurally defaulted.

To establish an ineffective assistance of counsel claim, a defendant must show (1) that

counsel's performance fell below an objective standard of reasonableness and (2) but for

counsel's ineffective assistance, the result of the proceeding would have been different.

Strickland v. Washington, 466 U.S. 668, 694 (1984).  Carter has established both prongs.

He has shown that his counsel's performance fell below the "range of competence

demanded by attorneys" and seriously undermined the proper functioning of the adversarial

process.  Johnson, 313 F.3d at 818.  If counsel had performed with the reasonableness demanded

by Strickland, he would have cited well-settled precedent, *i.e.*, Taylor v. United States, 495 U.S.

575 (1990), United States v. Palmer, 68 F.3d 52 (2d Cir. 1995), and United States v. Brown, 52

F.3d 415 (2d Cir. 1995), to challenge the use of Carter's prior convictions that were not

supported by the adequate factual basis that was required for them to qualify as predicate

offenses under the career criminal guidelines and the ACCA.  See Johnson, 313 F.3d at 818

(stating that familiarity with the sentencing guidelines is critical in criminal proceedings and

counsel who seeks to give effective representation must be familiar with all guideline

provisions).  Counsel's failure to do so in this case constituted a clear lapse in representation and

the Court can find no plausible strategic reason for counsel's error.  There is no reason to believe

that, had counsel raised the issue, the Court would have disregarded the controlling precedent.

Thus, counsel's error resulted in an enhanced sentence that was not applicable and caused Carter

prejudice.  Glover v. United States, 531 U.S. 198, 203 (2001) (holding that where a defendant

demonstrates a reasonable probability that his sentence was increased due to counsel's error,

even a relatively short increase in his sentence suffices to show Strickland prejudice).

Carter has established actual prejudice because there is more than a reasonable probability

that, but for counsel's deficient performance, the sentence imposed would have been different.

Id. (holding that any amount of actual jail time has Sixth Amendment significance). Indeed, "[i]t is difficult to imagine a circumstance more prejudicial than being in prison for a longer time than the law requires." Harris v. United States, No. 97Civ1904(CHS), 2002 WL 31427358, *7 (S.D.N.Y. Oct. 30, 2002).

There can be no reasonable dispute that counsel's failure to object to Carter's sentence enhancement as a career offender or an armed career criminal deprived Carter of the effective assistance of counsel and resulted in an increased period of incarceration.[19] Accordingly, Carter has established that he was deprived of his Sixth Amendment right to counsel and that he suffered actual prejudice. See Johnson, 313 F.3d at 818.

## III.   Conclusion

For the foregoing reasons, Carter's motion for reconsideration [doc. # 24] is GRANTED. Upon reconsideration, the Court finds that Carter received ineffective assistance of counsel at sentencing and that he suffered actual prejudice in the form of an increased sentence. Accordingly, the Court amends its prior denial of Carter's habeas petition and hereby GRANTS in part his § 2255 petition [doc. # 1] to the extent he seeks resentencing.

The Court will resentence Carter on a date to be scheduled. New counsel will be appointed to represent Carter in connection with his resentencing and the U.S. Probation Office

---

[19]According to the government, if Carter was not subject to a sentence enhancement as a career offender or armed career criminal, his sentence would be substantially less than 360 months. The government calculates his sentence as follows: on count one, Carter's adjusted offense level would be 25. With his criminal history category of VI, his sentencing range would be 110 to 137 months. With regard to count three, Carter's adjusted offense level would be 24, because he committed the offense after sustaining a felony conviction for a controlled substance offense and because he possessed a firearm in connection with another felony offense. With a criminal history category VI, his guideline sentencing range on count three would be 100 to 120 months. Carter would still be subject to a consecutive sentence of 84 months on count two, and his resulting total sentencing range would be 194 to 221 months pursuant to 18 U.S.C. §§ 924(c)(1)(A)(ii) and U.S.S.G. § 5G1.2.

shall prepare an amended PSR setting forth Carter's guideline sentencing range in accordance with this ruling.

SO ORDERED.

/s/
ELLEN BREE BURNS
SENIOR UNITED STATES DISTRICT JUDGE

Dated this 6<u>th</u> day of August, 2010 at New Haven, Connecticut.